Cardillo & Corbett
Attorneys for Plaintiff
THE GREAT EASTERN SHIPPING CO., LTD.
29 Broadway
New York, New York 10006
Tel: (212) 344-0464
Fax: (212) 797-1212
James P. Rau (JR-7209)

**'09 CIV 01051**

JUDGE KOELTL
RECEIVED
FEB 05 2009
S.D.C. S.D.N.Y
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

THE GREAT EASTERN SHIPPING CO., LTD.,

              Plaintiff,

       -against-

VISA COMTRADE (ASIA) LIMITED a/k/a
VISA COMTRADE LIMITED,

            Defendant.

------------------------------------------x

           :  **ECF**

           :  <u>**VERIFIED COMPLAINT**</u>

           Plaintiff, THE GREAT EASTERN SHIPPING CO., LTD., (hereinafter referred to as "Plaintiff"), by and through its attorneys, Cardillo & Corbett, as and for its Verified Complaint against the Defendant VISA COMTRADE (ASIA) LIMITED a/k/a VISA COMTRADE LIMITED (hereinafter referred to as "Defendant") alleges, upon information and belief, as follows:

<u>JURISDICTION</u>

           1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

<u>THE PARTIES</u>

           2.    At all material times to this action Plaintiff was, and still is, a foreign business entity duly organized and

existing under the laws of a foreign country with an address at Ocean House, 134/A Dr. Annie Besant Road, Mumbai, 400018, India.

3. Plaintiff was, at all material times, the registered owner of the M/V JAG RAVI (the "Vessel").

4. Upon information and belief, Defendant was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address at 15/F Tower 1, Lippo Center, 89 Queensway, Hong Kong. Upon information and belief, Defendant is known as Visa Comtrade (Asia) Limited and Visa Comtrade Limited.

## DEFENDANT'S BREACH OF CONTRACT

5. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-4 of this Complaint as if set forth at length herein.

6. On September 10, 2008, Plaintiff, as owner, chartered the Vessel to Defendant, as charterer, to carry a cargo of 45,000 metric tons 5% less owners option of steam coal in bulk from Indonesia to India (the "Charter Party"). A copy of the Charter Party is attached hereto as Exhibit 1.

7. On September 24, 2008 the Vessel arrived at the load port and loaded a full quantity of 44,104 metric tons of steam coal in bulk (the "Cargo").

8. Under the terms of the Charter Party, Defendant was authorized to issue bills of lading on behalf of the Master for the Cargo loaded on the Vessel.

9. On October 1, 2008, Defendant issued bills of lading for the Cargo to the shipper P.T. Garkat Utama Mulia Mandiri (the "Shipper"). The consignee named in the bills of lading was "to order" and the notify party/address was Oriental Bank of Commerce and Binani Cement Limited ("BCL").

10. Prior to the Vessel's arrival at the discharge port, the Defendant issued in favor of Plaintiff a Letter of Indemnity dated October 6, 2008 (the "LOI"), given in return for the Plaintiff's delivering the Cargo to the ultimate consignee BCL without production of the original bills of lading which had not yet arrived. A copy of the LOI is attached hereto as Exhibit 2.

11. The Charter Party provides that in case of non-availability of the original bills of lading at the discharge port, Plaintiff was to allow the discharge of the Cargo against Defendant's LOI.

12. On or about October 7, 2008, the Vessel arrived in India and based on Defendant's LOI, the Cargo was discharged by Plaintiff to BCL without production of the original bills of lading.

3

13.    The original bills of lading were never submitted to Plaintiff in exchange for the LOI.

14.    On November 12, 2008, the Shipper through counsel advised Plaintiff that it was demanding $1,492,626.12 in damages for Plaintiff's delivering the Cargo to BCL without production of the original bills of lading.  The Shipper maintained that its contractual buyer did not pay it the purchase price of the Cargo, and that the Shipper still possessed the original bills of lading.  The Shipper advised that it would arrest the Vessel, or other vessels owned by Plaintiff, to secure its claim.

15.    Thereafter, Shipper through counsel reiterated its threat to arrest the Plaintiff's vessels unless its claim was secured and further confirmed that it would be taking steps to make such arrests.

16.    Under the terms of the LOI, Defendant agreed to provide security to Plaintiff on demand should Plaintiff's vessels be threatened with arrest as a result of delivering the Cargo as per the terms of the LOI.  Paragraph 3 of the LOI provides in relevant part as follows:

> If, in connection with the delivery of the cargo as aforesaid, the ship or any other ship or property in the same or associated ownership...should be arrested or detained or should the arrest or detention thereof be threatened, ... to provide on demand such bail or other security as may be required to prevent such arrest or detention ... and to indemnify you in respect of any

4

liability, loss, damage or expense caused by such arrest
or detention or threatened arrest ....

17.   Plaintiff notified Defendant of the wrongful
discharge and delivery claim being asserted by the Shipper and
its threat to arrest the Vessel or other vessels owned by
Plaintiff.  Plaintiff demanded security pursuant to the terms
of the LOI in the sum of $2,500,000 against the claims of the
Shipper, which is inclusive of estimated interest and costs,
including attorney's fees and arbitrators' fees (as stated
below).

18.   Despite due demand, Defendant has failed and
refused to pay Plaintiff's demand for security in the sum of
$2,500,000, or any part thereof.

19.   The Charter Party provides that any disputes
arising under it shall be referred to arbitration in London,
England.   English law is applicable under the Charter Party.

20.   The Charter Party further provides that the
arbitrators shall award full costs, including reasonable
attorney's fees, to the prevailing party on any contested
issue.

21.   Plaintiff reserves the right to demand
arbitration against the Defendant pursuant to the terms of the
Charter Party.

## DEFENDANT NOT FOUND WITHIN THE DISTRICT

22. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank Leumi, Bank of America, Bank of China, Bank of Communications Co. Ltd. New York Branch, Bank of India, Bank of New York, Barclays Bank, BNP Paribas, Calyon, Citibank, Commerzbank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, State Bank of India, Societe Generale, UBS AG and/or Wachovia Bank, which are believed to be due and owing to the Defendant.

23. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any property of the Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure Plaintiff's claim as described above.

**WHEREFORE,** Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank Leumi, Bank of America, Bank of China, Bank of Communications Co. Ltd. New York Branch, Bank of India, Bank of New York, Barclays Bank, BNP Paribas, Calyon, Citibank, Commerzbank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, State Bank of India, Societe Generale, UBS AG and/or Wachovia Bank, which are due and owing to the Defendant, in the amount of $2,500,000 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

7

C.   That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

D.   That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:   New York, New York
         February 5, 2009

                    CARDILLO & CORBETT
                    Attorneys for Plaintiff
                    THE GREAT EASTERN SHIPPING CO., LTD.

          By:   _____
                    James P. Rau (JR 7209)

                    Office and P.O. Address
                    29 Broadway, Suite 1710
                    New York, New York 10006
                    Tel: (212) 344-0464
                    Fax: (212) 797-1212

8

## ATTORNEY'S VERIFICATION

State of New York )
                      ) ss.:
County of New York)

        1.     My name is James P. Rau.

        2.     I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

        3.     I am a partner in the firm of Cardillo & Corbett, attorneys for the Plaintiff.

        4.     I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

        5.     The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

        6.     The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

        7.     I am authorized to make this Verification on behalf of the Plaintiff.

_____
James P. Rau

Sworn to before me this
5th day of February, 2009

_____
NOTARY PUBLIC

**CHRISTOPHIL B. COSTAS**
Notary Public, State of New York
No. 31-0773693
Qualified in New York County
Commission Expires April 30, 2011

# EXHIBIT

# 1

....

Date: 10th September, 2008
Ref: IC/VNP/215/08

ABHISHEK / VANDANA

WE ARE PLEASED TO GIVE CLEAN FIXTURE RECAP AS AGREED
BETWEEN OWNERS AND CHRRS WITH CHARTER PARTY DATED 10TH SEPTEMBER, 2008

++ CLEAN FIXTURE RECAP ++
===================================

*// ALL NEGOS/EVENTUAL FIXTURE TO BE STRICTLY PRIVATE AND
CONFIDENTIAL AND NOT TO BE REPORTED BY OWNERS, CHARTERERS
AND BROKERS TO ANY THIRD PARTY OR **FIXTURE LIST //*

MV JAG RAVI ? EX SEA SATIN
===========================
INDIAN FLAG, SDBC - BUILT MARCH 1997
PLACE OF CONSTRUCTION - CSC, TAIWAN,ROC
CLASS : NKK / IRS
SUMMER DWT /SUMMER DRAFT ABOUT 45342 MT ON ABT 10,921M
TROPICAL DWT/DRAFT ABOUT 46,543 ON ABT 11.148M
WINTER DWT/DRAFT ABOUT 44,144 ON ABT 10.69M
FRESH WATER DWT/DRAFT ABOUT 45,346 ON ABT 11.17M
TPC 52.78 MT ON FULL DRAFT
L.O.A /BEAM/L.B.P  189,95/32.2/180 M
MOULDED DEPTH 15,84 M
TONNAGE INT'L PANAMA SUEZ
GROSS 26,322
NET 14,814
HOLDS/HATCHES FIVE/FIVE
CAPACITY GRAIN/BALE ABT 57,669 / ABT 55,646
LIGHT SHIP 7633
FREEBOARD ON SUMMER DRAFT 4,916 M
CONSTANTS ABOUT 350/450 MTS EXCL FW

CARGO HOLDS CAPACITIES/DIMENSIONS :

HOLD GRAIN BALE HATCH SIZE HOLD LENGTH
NO CBM CBM (M)X(M) (M)
-------------------------------------------------------------------

1 9845.36 9539.17 16.8 X 16.4 26.4
2 12220.12 11868.18 20.0 X 16.4 27.2
3 11894.09 11552.73 20.0 X 16.4 27.2

4 12268.95 11915.60 20 0 X 16.4 27.2
5 11440.80 11073.32 20 0 X 16.4 29.4
------------------------------------------------------------

TTL 57,669.32 55,946.00
TTL 2,035,574 1,975,715 (CBFT)

HATCH COVERS TYPE : MC GREGOR ELE-HYD FOLDING TYPE 4 PANELS
MAXIMUM PERMISSIBLE UNIFORM LOAD ON :
TANK TOP STRENGTH (T/M2) NO 1/3/5 : 24.17, NO 2/4 : 15.12
WEATHER DECK (T/M2) NO 1/5 : 2.6, NO 2/3/4 : 3.5
HATCH COVERS (T/M2) ALL : 2.45


CARGO GEAR :

GEAR - KAWASAKI ELE-HYD CRANES SWL 25MTS (NO 1+ 3) + 2 X 30MTS (NO 2+4)
OUTREACH OF CRANE   7.35 M (FROM SHIPSIDE)
MAX RADIUS/MAKER :
2 SETS X 30T CRANES - 24M AT 20DEG, 3.5M AT 3DEG.
2 SETS X 25T CRANES - 24M AT 20DEG, 3.5M AT 3DEG.
HOISTING CAPACITY :
2 X 30MTS CRANES - 30T X 21M/MIN
2 X 25MTS CRANES - 25T X 20M/MIN
SLEWING SPEED :
0.55RPM - 2 X 30MTS CRANES
0.65RPM - 2 X 25MTS CRANES
LOWERING SPEED :
84M/MIN - 2 X 30MTS CRANES
70M/MIN - 2 X 25MTS CRANES
LUFFING TIME:
ABT 63SEC (2 X 30MTS CRANES)
ABT 56SEC (2 X 25MTS CRANES)

GRABS: FOUR 12CBM ELECTRO HYDRAULIC/MAG PEINER GRABS WITH ADJUSTABLE
CAPACITY DOWN TO 10CBM, 8.0CBM, 6.5CBM AND 5CBM.

SWL OF CRANES UNDER GRAB OPERATION:
CRANES 1+3 24MT, CRANES 2+4 20MT (INCLUDING GRAB WEIGHT OF APPROX 9 MT)

$CO_2$ FITTED IN HOLDS NO
AUSTRALIAN HOLD LADDERS FITTED YES
GRAIN FITTED YES
LOGS FITTED NO
PANAMA/SUEZ FITTED YES
ITF OR EQUIVALENT YES
SUITABLE FOR GRAB DISCHARGE YES
CARGO HOLD VENTILATION NATURAL
CARGOBATTENS/CENTERLINE BULKHEAD NO/NO
ISM YES
BUNKERS CAPACITY 1992 MT IFO AND 117 MT MDO AT 98%

ALL DETAILS ABOUT

OWNERS CONFIRM THAT ALL SPACE IS GUARANTEED SUITABLE FOR GRAB DISCH AND AVAILABLE IN UNOBSTRUCTED CLEAR MAIN HOLD ONLY.
FULLY SUITABLE FOR BULLDOZER DISCHARGE WHICH ALWAYS TO BE SUBJECT TO VSL HOLD AND TT STRENGTH AND ALWAYS SUBJECT TO MASTERS DISCRETION.

OWNS TO CONFIRM THAT GRABS ARE SUITABLE TO LOAD STEAM NON COKING COAL CARGO OF INDONESIAN ORIGIN. IF SHORE GRABS ARE TO BE USED FOR LOADING SUCH CARGO THEN OWNS TO HIRE THE GRABS ON THEIR ACCOUNT AND ALL RELATED EXPENSES FOR HIRING THE GRABS WILL BE ON OWNS ACCOUNT.

1. A/C VISA COMTRADE (ASIA) LIMITED, HONG KONG

2. CARGO / QTY : MAX 45,000MTS 5% LESS IN OWNS OPTION STEAM COAL IN BULK.

3. LOADPORT : 1SP 1SA TABONEO, INDONESIA

4. LAYCAN AT LOAD PORT : 15TH - 25TH SEPTEMBER, (0001 HRS - 2359 HRS LT)

5. LOADING TERMS :
8000 MT PD SHINC BSS MIN 4 X 10/12 CBM GRABS, NOR ATDN SHINC + 12 HRS TT USC IUATUTC

6. DISCHARGE PORTS : 1SB 1SP NAVLAKHI, W.C INDIA.

7. DISCHARGING TERMS :
15,000 MT PD PWWD SHINC BSS MIN 4 X 10/12 CBM GRABS + NOR ATDN SHINC +
12 HOURS
TT ERU.

8. FRT USD 25.00 PMT FIOST BSS 1/1

9. FREIGHT PAYMENT : 95% FREIGHT LESS 2.5% ADCOM WITHIN 3 BANKING DAYS ACOL AND
S/R B/L MARKED 'FREIGHT PAYABLE AS PER C/P.
COMMENCEMENT OF DISCHARGE TO TAKE PLACE ONLY AFTER PAYMENT OF FRT AND TIME LOST
IF ANY TO COUNT AS LAYTIME.
BALANCE 5% FREIGHT ALONGWITH DEMM/DES WIIN 25 DAYS UPON COMPLETION OF DISCHARGE AND
RECEIPT OF SOF, TIMESHEET FM THE OWNERS AND FINALISATION OF LAYTIME CALCULATION AT LOAD
AND DISCHARGE PORTS.

10. DEM USD 25,000 HD WTS BENDS, LAYTIME NON-REVERSIBLE

11. IN CASE OF NON AVAILABILITY OF ORIGINAL B/LS AT DISCHARGE PORT, OWNERS TO ALLOW DISCHARGE OF CARGO AGAINST CHARTERERS' LOI IN OWNERS' PNI CLUB FORMAT. FAX COPY OF LOI TO BE ACCEPTABLE. COPY OF BSL TO BE ATTACHED WITH THE LOI.

12. BILL OF LADING
AT LOAD PORT CHRTRS AND/OR THEIR AGENTS ARE AUTHORISED BY OWNS TO SIGN AND RELEASE BILLS OF LADINGS ON BEHALF OF MASTER AS PER MASTER'S AUTHORISATION LETTER BUT BILLS OF LADING ALWAYS TO BE IN ACCORDANCE WITH MATE'S RECEIPT

13. CHRRS AGENTS BENDS SUB TO COMPETIVE PORT D/A

14. 2.5% ADCOM TO CHRTS + 1.25% TO INTEROCEAN SHIPPING CO NEW DELHI, ON FRT, DEADFREIGHT AND DEMURRAGE. CHRRS ARE ONLY ALLOWED TO DEDUCT 2.5% ADCOM FROM F/O/D.

15. FRT TO BE PAID AS PER BS/L QTTY AS PER DFT SURVEY.

16. INITIAL DRAFT SURVEY TIME TO COUNT AS LAYTIME. H'EVER FINAL DFT SURVEY TIME NOT
TO COUNT AS LAYTIME.

17. FRT DEEMED EARNED ON COMPLETION OF LOADING DISCOUNTLESS/NON RETURNABLE SHIP AND/OR
CGO LOST OR NOT LOST.

18. OTHERWISE AS PER M.V JAG RAVI/VISA CP DTD 14TH FEBRUARY, 2008 WITH LOGICAL CHANGES,
ALTERATIONS AND AMENDMENTS AS PER MAINTERMS AGREED.

END RECAP
==========

TRUST THE ABV RECAP IS IN ORDER.

BRGDS
VANDANA
MOB +91 9810705661

I N T E R O C E A N (AS BROKERS ONLY)
New Delhi 110024
I N D I A

TEL. +91-11-41551166
FAX. +91-11-41551177, 99

EMAIL dry@interoceangroup.com (for negos/general msgs)
orders@interoceangroup.com (for cargo orders)
positions@interoceangroup.com(for vessel's positions)
dryops@interoceangroup.com (for postfixture/operations)
WEBSITE www.interoceangroup.com

# INTEROCEAN



| 1.Shipbroker **INTEROCEAN SHIPPING COMPANY, NEW DELHI** | RECOMMENDED THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE UNIFORM GENERAL CHARTER (AS REVISED 1922 AND 1976) INCLUDING "F.I.O." ALTERNATIVE, ETC. (To be used for trades for which no approved form is in force) CODE NAME: "GENCON"                                   Part I |
|---|---|
|  | 2.  Place and date **HONG KONG, 14th FEBRUARY, 2008** |
| 3.  Owners/ Place of business (Cl.1) **THE GREAT EASTERN SHIPPING COMPANY LIMITED, MUMBAI** | 4.  Charterers/ Place of business (Cl.1) **VISA COMTRADE ASIA LTD, HONGKONG** |
| 5.  Vessel's name (Cl.1) **MV 'JAG RAVI'** | 6.  GRT/NRT (Cl.1) **26322 / 14814** |
| 7.  Deadweight cargo carrying capacity in tons (abt.) (Cl.1) **45,342 MT DWT ON 10.921 M SSW** | 8.  Present position (Cl.1) **TRADING** |
| 9.  Expected ready to load (abt.) (Cl.1) **25ᵗʰ FEBRUARY – 5th MARCH(0001 HRS – 2359 HRS LT), 2008** |  |
| 10.  Loading port or place (Cl.1) **ONE SAFE ANCHORAGE TABONEO, INDONESIA. - SEE RIDER CLAUSES** | 11.  Discharging port or place (Cl.1) **1 SAFE BERTH 1 SAFE PORT CHENNAI, EAST COAST INDIA WHERE CHARTERERS GUARANTEE MINIMUM 10.99 METERS SALT WATER ARRIVAL DRAFT - SEE RIDER CLAUSES** |
| 12.  Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state " part cargo") (Cl.1) **45,000MT 10% MORE OR LESS IN OWNERS OPTION STEAM COAL — SUBJECT RIDER CLAUSE 24 OF CHARTER PARTY.** | |
| 13.  Freight rate (also state if payable on delivered or intaken quantity) (Cl.1) **USD 27.75 PMT FIOST BASIS 1/1 - SEE RIDER CLAUSES** | 14.  Freight payment (state currency and method of payment: also beneficiary and bank account) (Cl.4) **SEE RIDER CLAUSE 48** |
| 15.  Loading and discharging costs (state alternative (a) or (b) of Cl.,5; also indicate if vessel is gearless) **FREE IN FREE OUT** | 16.  Laytime (if separate laytime for load. and disch. is agreed, fill in a)andb). If total laytime for load. and disch., fill in  c) only) (Cl.6) a) Laytime for loading **SEE RIDER CLAUSE 27** |
| 17.  Shippers (state name and address) (Cl. 6) **TO BE ADVISED** | b) Laytime for discharging **SEE RIDER CLAUSE 34** |
|  | c) Total Laytime for loading and discharging **NOT APPLICABLE** |
| 18.  Demurrage rate (loading and discharging) (Cl. 7) **USD 35,000 PDPR / HD WTS BENDS** | 19.  Cancelling date (Cl.10) **5th MARCH (2359 hrs LT) 2008** |
| 20.  Brokerage commission and to whom payable (Cl. 14) **2.5% ADDRESS COMMISSION TO CHARTERERS + 1.25% BROKERAGE TO INTEROCEAN SHIPPING COMPANY, NEW DELHI ON FREIGHT, DEAD FREIGHT AND  DEMURRAGE. CHRTRS ARE ONLY ALLOWED TO DEDUCT 2.5% ADDRESS COMMISSION FROM FREIGHT, DEAD FREIGHT AND DEMURRAGE.** | |
| 21.Additional clauses covering special provisions, if agreed. **RIDER CLAUSES 22 TO 75 AS ATTACHED HERETO ARE DEEMED TO FORM AN INTEGRAL PART OF THIS CHARTER PARTY** | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as  well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) For THE G.EAST.ERN SHIPPING CO. LTD.:  *S . K . Kapila* S. K. KAPILA ( GENERAL MANAGER CHARTERING ) ( SHIPPING DIVISION ) | Signature (Charterers) |
|---|---|



## PART II
### "GENCON" CHARTER (AS REVISED 1922, 1976 AND 1994)

1. 1.It is agreed between the party mentioned in Box 3 as the Owners of the Vessel
2. named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number
3. of metric tonnes of deadweight capacity all told on summer loadline stated in Box
4. 7, now in position as stated in Box 8 and expected ready to load under this
5. Charter Party about the date indicated in Box 9, and the party mentioned as the
6. Charterers in Box 4 that;
7. The said Vessel shall, as soon as her prior commitments have been completed,
8. proceed, to the loading port(s) or place(s) stated in Box 10 or sooner therein as
9. she may safely get and lie always afloat, and there load a full and complete
10. cargo ( If shipment of deck cargo agreed same to be at the Charterers' risk and
11. responsibility) as stated in Box 12, which the Charterers bind themselves to
12. ship and being so loaded the Vessel shall proceed to the discharging port(s) or
13. place(s) stated in Box 11 as ordered on signing Bills of Lading or so near
14. thereto as she may safely get and lie always afloat, and there deliver the cargo.

### 15. 2.Owners' Responsibility Clause
16. The Owners are to be responsible for loss of or damage to the goods or for
17. delay in delivery of the goods only in case the loss, damage or delay has been
18. caused by personal want of due diligence on the part of the Owners of their
19. Manager to make the Vessel in all respects seaworthy and to secure that she is
20. property manned, equipped and supplied, or by the personal act or default of
21. the Owners or their Manager.
22. ~~And the Owners are not responsible for loss, damage or delay arising from any~~
23. ~~Other cause whatsoever, even from the neglect or default of the Master or crew~~
24. ~~or some other person employed by the Owners on board or ashore for whose~~
25. ~~acts they would, but for this Clause, be responsible, or from unseaworthiness of~~
26. ~~The Vessel on loading or commencement of the voyage or at any time~~
27. ~~whatsoever.~~

### 28. 3. Deviation Clause
29. The Vessel has liberty to call of any port or ports in any order, for any purpose.
30. To sail without pilots, to tow and/or assist Vessel in all situations, and also to
31. Deviate for the purpose of saving life and/or property.

### 32. 4. Payment of freight          SEE RIDER CLAUSE 48
33. ~~(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the~~
34. ~~intaken quantity of cargo.~~
35. ~~(b) Prepaid. If according to Box 13 freight is to be paid on shipment, It shall be~~
36. ~~deemed earned and non- returnable Vessel and/or cargo lost or not lost.~~
37. ~~Neither the Owners nor their agents shall be required to sign or endorse bills of~~
38. ~~lading showing freight prepaid unless the freight due to the owners has~~
39. ~~actually been paid.~~
40. ~~(c) On delivery. If according to Box 13 freight, or part thereof, is payable at~~
41. ~~destination it shall not be deemed earned until the cargo is thus delivered.~~
42. ~~Notwithstanding the provisions under (a), if freight or part thereof is payable on~~
43. ~~delivery of the cargo the Charterers shall have the option of paying the freight~~
44. ~~on delivered weight/quantity provided such option is declared before breaking~~
45. ~~Bulk and the weight/quantity can be ascertained by official weighing machine,~~
46. ~~Joint draft survey or tally.~~
47. ~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced~~
48. ~~By the Charterers If required at highest current rate of exchange subject to~~
49. ~~Two(2) percent to cover insurance and other expenses.~~

### 50. 5. Loading / Discharging   SEE RIDER CLAUSES
51. (a) Costs/Risks
52. ~~The cargo shall be brought into the holds, loaded, stowed and/or trimmed,~~
53. ~~tallied, lashed and/or secured and taken from the holds and discharged by the~~
54. ~~Charterers free of any risk liability and expense whatsoever to the Owners.~~
55. ~~The Charterers shall provide and lay all dunnage material as required for the~~
56. ~~proper stowage and protection of the cargo on board, the Owners allowing the~~
57. ~~use of all dunnage available on board. The Charterers shall be responsible for~~
58. ~~and pay the cost of removing their dunnage after discharge of the cargo under~~
59. ~~this Charter Party and time to count until dunnage has been removed.~~
60. (b) Cargo Handling Gear
61. ~~Unless the Vessel is gearless or unless it has been agreed between the parties~~
62. ~~that the Vessel's gear shall not be used and stated as such in Box 15 the~~
63. ~~Owners shall throughout the duration of loading / discharging give free use of~~
64. ~~the Vessel's cargo handling gear and of sufficient motive power to operate all~~
65. ~~such cargo handling gear. All such equipment to be in good working order.~~
66. ~~Unless caused by negligence of the stevedores time lost by breakdown of the~~
67. ~~Vessel's cargo handling gear or motive power pro rata the total number of~~
68. ~~Cranes / winches required at that time for the loading/discharging of cargo~~
69. ~~Under this Charter Party shall not count as laytime or time on demurrage.~~
70. ~~On request the Owners shall provide free of charge cranemen/winchmen from~~
71. ~~The crew to operate the Vessel's cargo handling gear unless local regulations~~
72. ~~prohibit this in which latter event shore labourers shall before the account of the~~
73. ~~Charterers. Cranemen/winchmen shall be under the Charterers' risk and~~
74. ~~responsibility and as stevedores to be deemed as their servants but shall~~
75. ~~always work under the supervision of the Master.~~

### 76. (c) Stevedore Damage   SEE RIDER CLAUSE 50
77. ~~The Charterers shall be responsible for damage (beyond ordinary wear and~~
78. ~~tear) to any part of the Vessel caused by Stevedores. Such damage shall be~~
79. ~~notified as soon as reasonably possible by the Master to the Charterers or their~~
80. ~~agents and to their Stevedores failing which the Charterers shall not be held~~
81. ~~responsible. The Master shall endeavour to obtain the Stevedores' written~~
82. ~~acknowledgement of liability.~~

---

83. ~~The Charterers are obliged to repair any stevedore damage prior to completion~~
84. ~~of the voyage, but must repair stevedore damage affecting the Vessel's~~
85. ~~seaworthiness or class before the Vessel sails from the port where such~~
86. ~~damage was caused or found. All additional expenses incurred shall be for the~~
87. ~~account of the Charterers and any time lost shall be for the account of and shall~~
88. ~~be paid to the Owners by the Charterers at the demurrage rate.~~

### 89. 6. Laytime          SEE RIDER CLAUSES 27, 34 & 36
90. ~~(a) Separate laytime for loading and discharging~~
91. ~~The cargo shall be loaded within the number of running days/hours as~~
92. ~~indicated in Box 16, weather permitting, Sundays and holidays excepted,~~
93. ~~unless used, in which event time used shall count.~~
94. ~~The cargo shall be discharged within the number of running days/hours as~~
95. ~~indicated in Box 16, weather permitting, Sundays and holidays excepted,~~
96. ~~unless used in which event time used shall count.~~
97. ~~(b) Total laytime for loading and discharging~~
98. ~~The cargo shall be loaded and discharged within the number of total running~~
99. ~~days/hours as indicated in Box 16, weather permitting, Sundays and holidays~~
100. ~~excepted unless used in which event time used shall count.~~
101. ~~(c) Commencement of laytime (loading and discharging)~~
102. ~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of~~
103. ~~readiness is given up to and including 1200 hours, and -at 0600 hours - next~~
104. ~~working day if notice given during office hours after -1200 hours. Notice of~~
105. ~~readiness of loading port to be given to the Shippers named in line 17 or if not~~
106. ~~named, to the Charterers or their agents named in Box 15. Notice of readiness~~
107. ~~at the discharging port to be given to the Receivers or if not known to the~~
108. ~~Charterers or their agents named in Box 19.~~
109. ~~If the loading/discharging berth is not available on the Vessel's arrival at or off~~
110. ~~The port of loading/discharging, the Vessel shall be entitled to give notice of~~
111. ~~Readiness within ordinary office hours on arrival there whether in free-pratique~~
112. ~~Or not, whether customs cleared or not. Laytime or time on demurrage shall~~
113. ~~then count as if the were in berth and in all respects ready for loading/~~
114. ~~discharging provided that the Master warrants that she is in fact ready in all~~
115. ~~respects. Time used in moving from the place of waking to the loading/~~
116. ~~discharging berth shall not count as laytime.~~
117. ~~If after inspection the Vessel is found not to be ready in all respects to load/~~
118. ~~Discharge time lost after the discovery thereof until the Vessel is again ready to~~
119. ~~Load/discharge shall not count as laytime.~~
120. ~~Time used before commencement of laytime shall count.~~
121. ~~indicate alternative (a) or (b) as agreed, in Box 16~~

### 122. 7.  Demurrage  SEE RIDER CLAUSE 37
123. ~~Demurrage at the loading and discharging port is payable by the Charterers at~~
124. ~~The rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for~~
125. ~~any part of a day. Demurrage shall fall due by day and shall be payable~~
126. ~~upon receipt of the Owners Invoice.~~
127. ~~In the event the demurrage is not paid in accordance with above the~~
128. ~~Owners shall give the Charterers 96 running hours written notice to rectify the~~
129. ~~failure. If the demurrage is not paid at the expiration of this time limit and if the~~
130. ~~Vessel is in or at the loading port the Owners are entitled at any time to~~
131. ~~terminate the Charter Party and claim damages for any losses caused thereby.~~

### 132. 8.  Lien Clause
133. ~~the owners shall have a lien on the cargo and on all sub freights payable in~~
134. ~~respect of the cargo for freight, deadfreight demurrage claims for damages~~
135. ~~and for all other amounts due under this Charter Party including costs of~~
136. ~~recovering same.~~

### 137. 9.  Cancelling Clause
138. (a) Should the Vessel not be ready to load ( whether in berth or not ) on the
139. cancelling date indicated in Box 21 the Charterers shall have the option of
140. cancelling this Charter Party.
141. (b) Should the Owners anticipate that, despite the exercise of due  diligence,
142. the Vessel will not be ready to load by the cancelling date, they shall notify the
143. Charterers thereof without  delay stating the expected date of the Vessel's
144. Readiness to load and asking whether the Charterers will exercise their option
145. of cancelling the Charter Party or agree to a new cancelling date.
146. Suck option must be declared by the Charterers within 48 running hours after
147. the receipt of the Owners notice. If the Charterers do not exercise their option
148. of cancelling, then this Charter Party shall be deemed to be amended such that
149. the seventh day after the new readiness date stated in the Owners notification
150. to the Charterers shall be the new cancelling date.
151. The provisions of sub-clause (b) of this Clause shall operate only once and in
152. case of the Vessel's further delay the Charterers shall have the option of
153. cancelling the Charter Party as per sub-clause (a) of this Clause.

### 154. 10. Bills of Lading   SEE RIDER CLAUSES
155. ~~Bills of Lading shall be presented and signed by the Master as per the~~
156. ~~"Congenbill" Bill of Lading form, Edition, 1994 without prejudice to this Charter~~
157. ~~Party, or by the Owners' agents provided written authority has been given by~~
158. ~~Owners to the agents a copy of which is to be furnished to the Charterers. The~~
159. ~~Charterers shall indemnify the Owners against all consequences or liabilities~~
160. ~~that may arise from the signing of bills of lading as presented to the extent that~~
161. ~~the terms or contents of such bills of lading impose or result in the imposition of~~
162. ~~more onerous liabilities upon the Owners than those assumed by the Owners~~
163. ~~under this Charter Party.~~



164. **11. Both-to-Blame Collision Clause**
165. If the Vessel comes into collision with another vessel as a result of the
166. negligence of the other vessel and any act, neglect or default of the Master,
167. Mariner, Pilot or the servants of the Owners in the navigation or in the
168. management of the Vessel the owners of the cargo carried hereunder will
169. indemnify the Owners against all loss or liability to the other or non - carrying
170. Vessel or her owners in so far as such loss or liability represents loss of, or
171. damage to, or any claim whatsoever of the owners of said cargo, paid or
172. payable by the other or non - carrying vessel or her owners of said
173. Cargo and set-off, recouped or recovered by the other or non-carrying vessel
174. Or her owners as part of their claim against the carrying Vessel or the Owners.
175. The foregoing provisions shall also apply where the owners, operators or those
176. in charge of any vessel or vessels or objects other than or in addition to the
177. colliding vessels or objects are at fault in respect of a collision or contact.

178. **12. General Average and New Jason Clause**
179. General Average shall be adjusted in London unless otherwise agreed in Box
180. 22 according to York - Antwerp Rules 1994 and any subsequent modification
181. thereof. Proprietors of cargo to pay the cargo's share in the general expenses
182. even if same has been necessitated through neglect or default of the Owners
183. Servants (see Clause 2)
184. If General Average is to be adjusted in accordance with the law and practice of
185. the United States of America, the following Clause shall apply: "In the event of
186. accident, danger, damage or disaster before or after the commencement of the
187. voyage resulting from any cause whatsoever, whether due to negligence or
188. not for which or for the consequence of which the Owners are not
189. responsible by statute contract or otherwise the cargo shippers, consignees
190. or the owners of the cargo shall contribute with the Owners in General Average
191. to the payment of any sacrifices, losses or expenses of a General Average
192. nature that may be made or incurred and shall pay salvage and special charges
193. incurred in respect of the cargo. If a salving vessel is owner or operated by the
194. Owners salvage shall be paid for as fully as if the said salving vessel or vessels
195. Belonged to strangers. Such deposit as the Owners or their agents may deem
196. sufficient to cover the estimated contribution of the goods and any salvage and
197. Special charges thereon shall, If required, be made by the cargo, shippers,
198. consignees or owners of the goods to the Owners before delivery.

199. **12. Taxes and Dues Clause     SEE RIDER CLAUSES 63**
200. (a) On Vessel - The Owners shall pay all dues, charges and taxes customarily
201. levied on the Vessel, howsoever the amount thereof may be assessed.
202. (b) On cargo- The Charterers shall pay all dues, charges, duties and taxes
203. customarily levied on the cargo, howsoever the amount thereof may be
204. assessed.
205. (c) On freight- Unless otherwise agreed in Box 23 taxes levied on the freight
206. shall be for the Charterers account Owners account.

207. **14. Agency     SEE CLAUSE 45**
208. In every case the Owners shall appoint their own Agent both at the port of
209. Loading and the port of discharge.

210. **15. Brokerage**
211. A brokerage commission at the rate stated in Box 24 on the freight, dead freight
212. And demurrage earned is due to the party mentioned in Box 24.
213. In case of non- execution 1/3 of the brokerage on the estimated amount of
214. freight to be paid by the party responsible for such non- execution to the
215. brokers as Indemnity for the latter's expenses and work. In case of more
216. Voyages the amount of indemnity to be agreed.

217. **15. General Strike Clause**
218. (a) If there is a strike of lock- out affecting or preventing the actual loading of the
219. cargo, or any part of it, when the Vessel is ready to proceed from her last port or
220. at any time during the voyage to the port or ports of loading or after her arrival
221. there, the Master or the may ask the Charterers to declare that they
222. agree to reckon the laydays as if there were no strike or lock-out. Unless the
223. Charterers have given such declaration in writing (by telegram, if necessary)
224. Within 24 hours the Owners shall have the option of cancelling this Charter
225. Party. If part cargo has already been loaded, the Owners must proceed with
226. Same (freight payable on loaded quantity only) having liberty to complete with
227. other cargo on the way for their own account.
228. (b) If there is a strike or lock out affecting or preventing the actual discharging
229. of the cargo on or after the Vessel's arrival at or off port of discharge and same
230. has not been settled within 48 hours the Charterers shall have the option of
231. keeping the Vessel waiting until such strike or lock out is at an end against
232. paying half demurrage after expiration of the time provided for discharging
233. until the strike or lock out terminates and thereafter full demurrage shall be
234. payable until the completion of discharging or of ordering the Vessel to a safe
235. port where she can safely discharge without risk of being detained by strike or
236. lock out. Such orders to be given within 48 hours after the Master or the
237. Owners have given notice to the Charterers of the strike or lock out affecting
238. the discharge. On delivery of the cargo at such port all conditions of
239. Charter Party and of the Bill of Lading shall apply and the Vessel shall receive

240. The same freight as if she had discharged at the original port of destination
241. except that if the distance to the substituted port exceeds 100 nautical miles
242. the freight on the cargo delivered at the substituted port to be increased in
243. proportion.
244. (c) Except for the obligations described above, neither the Charterers nor the
245. Owners shall be responsible for the consequences of any strikes or lock- out
246. preventing or affecting the actual loading or discharging of the cargo.

247. **17. War Risks (" Voywar 1993")**
248. (1) For the purpose of this Clause, the words:
249. (a) The " Owners " shall include the ship owners, bareboat charterers,
250. disponent owners, managers or other operators who are charged with the
251. management of the Vessel, and the Master; and
252. (b) "War Risks" shall include any war (whether actual or threatened ), act of
253. war, civil war, hostilities, revolution, rebellion, civil commotion, warlike
254. operations, the laying of mines ( whether actual or reported ), acts of piracy,
255. acts of terrorists, acts of hostility or malicious damage, blockades
256. (whether imposed against all Vessels or imposed selectively against
257. vessels of certain flags or ownership, or against certain cargoes or crews
258. or otherwise howsoever ), by any person body terrorist or political group
259. of the Government of any state whatsoever which in the reasonable
260. judgement of the Master and / or the Owners may be dangerous or are
261. likely to be or to become dangerous to the Vessel her cargo crew or other
262. Persons on board the Vessel.
263. (2) If at any time before the Vessel commences loading, it appears that in the
264. reasonable judgement of the Master and / or the Owners performance of
265. the Contract of Carriage or any part of it may expose or is likely to expose
266. the Vessel her cargo crew or other persons on board the Vessel to War
267. risks, the Owners may give notice to the Charterers cancelling this
268. Contract of Carriage or may refuse to perform such part of it as may
269. expose or may be likely to expose the Vessel her cargo crew or other
270. persons on board the Vessel to War Risks provided always that if this
271. Contract of Carriage provides that loading or discharging is to take place
272. Within a range of ports, and at the port or ports nominated by the Charterers
273. The Vessel her cargo crew or other persons on board the Vessel may be
274. exposed or may be likely to be exposed to War Risks the Owners shall
275. first require the Charterers to nominate any other safe port which lies
276. within the range for loading or discharging and may only cancel this
277. Contract of Carriage if the Charterers shall not have nominated such safe
278. Port or ports within 48 hours or receipt of notice of such requirement.
279. (3) The Owners shall not be required to continue to load cargo for any voyage
280. or to sign Bills of Lading for any port or place or to proceed or continue on
281. any voyage or on any part thereof or to proceed through any canal or
282. waterway or to proceed to or remain at any port or place whatsoever
283. where it appears either after the loading of the cargo commences or at
284. any stage of the voyage thereafter before the discharge of the cargo is
285. completed that in the reasonable judgement of the Master and / or the
286. Owners the Vessel her cargo ( or any part thereof ) crew or other persons
287. On board the Vessel (or any one or more of them) may be or are likely to be
288. exposed to War Risks. If it should so appear the Owners may by notice
289. request the Charterers to nominate a safe port for the discharge of the
290. cargo or any part thereof and if within 48 hours of the receipt of such
291. notice the Charterers shall not have nominated such a port the Owners
292. May discharge the cargo at any safe port of their choice ( including the port
293. of loading) in complete fulfillment of the Contract of Carriage. The Owners
294. shall be entitled to recover from the Charterers the extra expenses of such
295. discharge and if the discharge takes place at any port other than the
296. loading port to receive the full freight as though the cargo had been
297. carried to the discharging port and if the extra distance exceeds 100 miles
298. to additional freight which shall be the same percentage of the freight
299. contracted for as the percentage which the extra distance represents to
300. The distance of the normal and customary route the Owners having a lien
301. On the cargo for such expenses and freight.
302. (4) If at any stage of the voyage after the loading of the cargo commences, it
303. appears that in the reasonable judgement of the Master and / or the
304. Owners the Vessel her cargo crew or other persons on board the Vessel
305. may be or likely to be exposed to War Risks on any part of the route
306. (including any canal or waterway) which is normally and customarily used
307. in a voyage of the nature contracted for and there is another longer route
308. to the discharging port the Owners shall give notice to the Charterers that
309. this route will be taken. In this event the Owners shall be entitled if the total
310. extra distance exceeds 100 miles to additional freight which shall be the
311. same percentage of the freight contracted for as the percentage which the
312. extra distance represents to the distance of the normal and customary
313. route.
314. (5) The Vessel shall have liberty:-
315. (a) to comply with all orders, directions recommendations or advice as to
316. departure arrival routes sailing in convoy ports of call stoppages
317. destinations discharge of cargo delivery or in any way whatsoever




318. are given by the Government of the Nation under whose flag the Vessel
319. sails or other Government to whose laws the Owners are subject or any
320. other Government which so requires or any body or group acting with the
321. power to compel compliance with their orders or directions.
322. (b) to comply with the orders directions or recommendations of any war
323. risks underwriters who have the authority to give the same under the terms
324. of the war risks insurance.
325. (c ) to comply with the terms of any resolution of the Security Council of the
326. United Nations any directives of the European Community the effective
327. orders of any other Supranational body which has the right to issue and
328. give the same and with national laws aimed at enforcing the same to which
329. the Owners are subject and to obey the orders and directions of those who
330. are charged with their enforcement:
331. (d) to discharge at any other port any cargo or part thereof which may
332. render the Vessel liable to confiscation as a contraband carrier:
333. (e) to call at any other port to change the crew or any part thereof or other
334. persons on board the Vessel when there is reason to believe that they may
335. be subject to internment imprisonment or other sanctions:
336. (f) where cargo has not been loaded or has been discharged by the
337. Owners under any provisions of this Clause to load other cargo for the
338. Owners own benefit and carry it to any other port or ports whatsoever
339. whether backwards or forwards or in a contrary direction to the ordinary or
340. customary route.

341. (5) If in compliance with any of the provisions of sub-clauses (2) to (5) of this
342. clause anything is done or not done, such shall not be deemed to be a
343. deviation but shall be considered as due fulfilment of the Contract of
344. Carriage.

345. 18. General Ice Clause
346. ~~Part of loading~~
347. ~~(a) In the event of the loading port being inaccessible by reason of ice when the~~
348. ~~Vessel is ready to proceed from her last port or at any time during the voyage or~~
349. ~~On the Vessel's arrival or in case frost sets in after the Vessel's arrival the~~
350. ~~Master for fear of being frozen-in is at liberty to leave without cargo and this~~
351. ~~Charter Party shall be null and void.~~
352. ~~(b) If during loading, the Master for fear of the Vessel being frozen in deems it~~
353. ~~advisable to leave he has liberty to do so with what cargo he has on board and~~
354. ~~to proceed to any other port or ports with option of completing cargo for the~~
355. ~~Owners benefit for any port or ports including port of discharge. Any port~~
356. ~~cargo thus loaded under this Charter Party to be forwarded to destination at the~~
357. ~~Vessel's expense but against payment of freight provided that no extra~~
358. ~~expenses be thereby caused to the Charterers freight being paid on quantity~~
359. ~~delivered ( in proportion if lumpsum ), all other conditions as per this Charter~~
360. ~~Party.~~
361. ~~(c ) In case of more than one loading port, and if one or more of the ports are~~
362. ~~closed by ice the Master or the Owners to be at liberty either to load the port~~
363. ~~cargo at the open port and fill up elsewhere for their own account or under~~
364. ~~section (b) or to declare the Charter Party null and void unless the Charterers~~
365. ~~agree to load full cargo at the open port.~~
366. ~~Part of discharge~~
367. ~~(a) Should ice prevent the Vessel from reaching port of discharge the~~
368. ~~Charterers shall have the option of keeping the Vessel waiting until the re-~~
369. ~~opening of navigation and paying demurrage or of ordering the Vessel to a safe~~
370. ~~and immediately accessible port where she can safely discharge without risk of~~
371. ~~detention by ice. Such orders to be given within 48 hours after the Master or the~~
372. ~~Owners have given notice to the Charterers of the impossibility of reaching port~~
373. ~~of destination.~~
374. ~~(b) If during discharging the Master for fear of the Vessel being frozen in deems~~
375. ~~it advisable to leave, he has liberty to do so with what cargo he has on board and~~
376. ~~to proceed to the nearest accessible port where she can safely discharge.~~
377. ~~(c ) On delivery of the cargo at such port, all conditions of the Bill of Lading shall~~
378. ~~apply and the Vessel shall receive the same freight as if she had discharged at~~
379. ~~the original port of destination except that if the distance of the substituted port~~
380. ~~exceeds 100 nautical miles, the freight on the cargo delivered at the substituted~~
381. ~~port to be increased in proportion.~~

382. 19. Law and Arbitration
383. This Charter Party shall be governed by and construed in accordance with
384. English law and any dispute arising out of this Charter Party shall be referred to
385. arbitration in Singapore ~~London in accordance with the Arbitration Acts 1950~~
~~and 1979 or~~
386. ~~any statutory modification or re-enactment thereof for the time being in force~~
387. ~~unless the parties agree upon a sole arbitrator one arbitrator shall be~~
388. ~~appointed by each party and the arbitrators so appointed shall appoint a third~~
389. ~~unless the decision of the three-man tribunal thus constituted or any two of~~
390. ~~them shall be final. On the receipt by one party of the nomination in writing of~~
391. ~~The other party's arbitrator that party shall appoint their arbitrator within~~
392. ~~fourteen days, failing which the decision of the single arbitrator appointed shall~~
393. ~~be final~~
394. ~~For disputes where the total amount claimed by either party does not exceed~~
395. ~~The amount stated in Box 25** the arbitration shall be conducted in accordance~~
396. ~~with the Small Claims Procedure of the London Maritime~~
~~Arbitrators~~

397. ~~Association~~
398. ~~(b) This Charter Party shall be governed by and construed in accordance with~~
399. ~~title 9 of the United States Code and the Maritime Law of the United States and~~
400. ~~Should any dispute arise out of this Charter Party the matter in dispute shall be~~
401. ~~referred to three persons at New York one to be appointed by each of the~~
402. ~~Parties hereto and the third by the two so chosen their decision or that of any~~
403. ~~two of them shall be final and for purpose of enforcing any award this~~
404. ~~agreement may be made a rule of the Court. The proceedings shall be~~
405. ~~conducted in accordance with the rules of the Society of Maritime Arbitrators~~
406. ~~Inc.~~
407. For disputes where the total amount claimed by either party does not exceed
408. the amount stated in Box 25** the arbitration shall be conducted in accordance
409. With the Shortened Arbitration Procedure of the Society of Maritime Arbitrators.
410. Inc.
411. (c ) Any dispute arising out of this Charter Party shall be referred to arbitration at
412. ~~the place indicated in Box 25~~ London subject to the procedure applicable
there. The
413. laws of the place indicated in Box 25 shall govern this Charter Party. ~~(add-~~
~~tional clauses 51 and 52 to apply)~~
414. (d) If Box 25 in Part 1 is not filled in sub-clause (a) of this Clause shall apply.
415. (a) (b) and (c) are alternatives, indicate alternative agreed in Box 25
416. **Where no figure is supplied in Box25 in Part I this provision only shall be void but
417. the other provisions of this Clause shall have full force and remain in effect





**RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD.,
CHARTER PARTY DATED 14th FEBRUARY, 2008**

### 22. Vessel's Description

-MV JAG RAVI
================

~ EX SEA SATIN
INDIAN FLAG, SDBC - BUILT MARCH 1997
PLACE OF CONSTRUCTION - CSC, TAIWAN,ROC
CLASS : NKK / IRS
SUMMER DWT/SUMMER DRAFT ABOUT 45342 MT ON ABT 10,921M
TROPICAL DWT/DRAFT ABOUT 46,543 ON ABT 11.148M
WINTER DWT/DRAFT ABOUT 44,144 ON ABT 10.69M
FRESH WATER DWT/DRAFT ABOUT 45,346 ON ABT 11.17M
TPC 52.78 MT ON FULL DRAFT
L.O.A./BEAM/L.B.P. 189,95/32,2/180 M
MOULDED DEPTH 15,84 M

TONNAGE INTL PANAMA SUEZ
GROSS 26,322 NET 14,814

HOLDS/HATCHES FIVE/FIVE

CAPACITY GRAIN/BALE ABT 57,669 / ABT 55,646

LIGHT SHIP 7833

FREEBOARD ON SUMMER DRAFT 4.916 M
CONSTANTS ABOUT 350/450 MTS EXCL FW

CARGO HOLDS CAPACITIES/DIMENSIONS :
HOLD GRAIN BALE HATCH SIZE HOLD LENGTH

NO CBM CBM (M)X(M) (M)
------------------------------------------------------------------
1 9845.36 9539.17 16.8 X 16.4 26.4
2 12220.12 11868.18 20.0 X 16.4 27.2
3 11894.09 11552.73 20.0 X 16.4 27.2
4 12268.95 11915.60 20.0 X 16.4 27.2
5 11440.80 11073.32 20.0 X 16.4 29.4
------------------------------------------------------------------
TTL 57,669.32 55,946.00

TTL 2,036,574 1,975,716 (CBFT)

HATCH COVERS TYPE : MC GREGOR ELE-HYD FOLDING TYPE 4 PANELS
MAXIMUM PERMISSIBLE UNIFORM LOAD ON :
TANK TOP STRENGTH (T/M2) NO 1/3/5 : 24.17, NO 2/4 : 15.12
WEATHER DECK (T/M2) NO 1/5 : 2.6, NO 2/3/4 : 3.5
HATCH COVERS (T/M2) ALL : 2.45





### RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD., CHARTER PARTY DATED 14th FEBRUARY, 2008

CARGO GEAR :

GEAR - KAWASAKI ELE-HYD CRANES SWL 25MTS (NO 1+ 3) + 2 X 30MTS (NO 2+4)
OUTREACH OF CRANE : 7.35 M (FROM SHIPSIDE)

GRABS: FOUR 12CBM ELECTRO HYDRAULICSMAG PEINER GRABS

SWL OF CRANES UNDER GRAB OPERATION:

CRANES 1+3 24MT, CRANES 2+4 20MT (INCLUDING GRAB WEIGHT OF APPROX 9 MT)

VSL CREW NOT TO DRIVE CRANES / GRABS.

IN CASE OF GRABS USE, GRAB CAPACITY TO BE ADJUSTED AS PER CARGO
STOWAGE /DENSITY AND SWL OF CRANE UNDER GRAB OPERATION. IN ANY CASE,
VSL GRABS NOT TO BE USED FOR LOADING CARGOS HAVING DENSITY IN EXCESS
OF 2.5 MT/CBM.

CO2 FITTED IN HOLDS NO
AUSTRALIAN HOLD LADDERS FITTED YES
GRAIN FITTED YES
LOGS FITTED NO
PANAMA/SUEZ FITTED YES
ITF OR EQUIVALENT YES
SUITABLE FOR GRAB DISCHARGE YES
CARGO HOLD VENTILATION NATURAL
CARGOBATTENS/CENTERLINE BULKHEAD NO/NO
ISM YES
BUNKERS CAPACITY 1992 MT IFO AND 117 MT MDO AT 96%

(ALL DETAILS ABOUT)

OWNERS CONFIRM THAT ALL SPACE IS GUARANTEED SUITABLE FOR GRAB DISCH
AND AVAILABLE IN UNOBSTRUCTED CLEAR MAIN HOLD ONLY, FULLY SUITABLE
FOR BULLDOZER DISCHARGE WHICH ALWAYS TO BE SUBJECT TO VSL HOLD AND
TT STRENGTH AND ALWAYS SUBJECT TO MASTERS DISCRETION.

OWNERS TO CONFIRM THAT GRABS ARE SUITABLE TO LOAD STEAM NON COKING
COAL CARGO OF INDONESIAN ORIGIN. IF SHORE GRABS ARE TO BE USED FOR
LOADING SUCH CARGO THEN OWNS TO HIRE THE GRABS ON THEIR ACCOUNT AND
ALL RELATED EXPENSES FOR HIRING THE GRABS WILL BE ON OWNS ACCOUNT.

23.
Notice of Readiness at the loadport shall be tendered any time day/night
Sundays/holidays included (ATDNSHINC). 12 hours turn time unless sooner
commenced if used actual time used to count.





### RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD., CHARTER PARTY DATED 14th FEBRUARY, 2008

Notice of Readiness at the disport shall be tendered any time day/night Sundays/holidays included (ATDNSHINC). 12 hours turn time unless sooner commenced if used actual time used to count.

**24.** Ship Owners shall pay and bear any dues and/or taxes on the vessel and/or freight and all port charges, (except loading and unloading charges), tonnage dues, light dues and other taxes, assessments and charges which are customarily payable on or with respect to the vessel at load and discharge port(s). Owners are required to pay port disbursements, including Agency fees, both at load and discharge ports.

**25.** Charterers shall arrange 1 safe ~~berth~~ anchorage at load port and cargo to be spout / grab trimmed upto Master's full satisfaction and discharged free of expenses to Owners.

**26.** Owners shall ensure that the vessel shall provide to the receivers, shippers and stevedores free use of cranes and grabs as available on board and power for use in trimming cargo at discharge and for all work incidental to discharging of coal, together with all lights as on board for working the vessel 24 hours per day at no cost to the suppliers, receivers, stevedores or Charterers.

**27.** At loading port, loading rate will be 8000 metric tons per day Sundays and Holidays included basis minimum 4x10 cbm grabs. Notice of readiness to be tendered at any time day and night Sundays and Holidays included

**28.** At load port demurrage, if any, incurred by the Vessel in the event Charterers fail to maintain the loading rate guaranteed hereinabove shall be at the rate of USD 35,000 per day pro rata.
Despatch, if any, earned by the Charterers at the load port as a result of completion of loading into the Vessel earlier than herein above provided shall be calculated at half the demurrage rate on the basis of working time saved.

**29.** Shippers shall load the cargo in accordance with the Master's or Chief Officer's instructions and shall arrange to trim the cargo to the Master's satisfaction.

**30.** Owners/Master/Agents shall ensure release of Bill(s) of Lading marked "Freight payable as per Charter Party" immediately and in any case not later than 24 hours of completion of loading. Quantity determined by draft survey conducted at the loading port shall be declared in the Bill(s) of Lading.

**31.** Owners/Master should arrange for holds of the vessel to be cleaned free from residue of previous cargo like sulphur, fertilizers etc. before loading the cargo.

**32.** On completion of loading, a Statement of Facts shall be made out at the load port, duly signed by the Master / Agents of the Vessel and the shippers / their representatives.

**33.** Master to advise Charterers / their Agents 7 days in advance regarding Vessel's expected date/ time of arrival at discharge port.

**34. Discharge port:**





## RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD., CHARTER PARTY DATED 14th FEBRUARY, 2008

1 safe berth, 1 safe port Chennai East Coast India where Charterers guarantee minimum 10.99 meters salt water arrival draft.

Charterers guarantee to discharge the cargo free of expense to the vessel at the average rate of 10,000 MT per weather working day , Sundays and holidays included.

**35.** Notice of readiness at discharge port to be served in writing to the receivers by the Master any time day/night Sundays/holidays included.

On arrival at discharge port Master shall tender notice of readiness in writing to the receiver also certifying that the vessel has arrived at or off port and is in every respect ready to commence discharge the cargo onboard.

**36. Time counting provisions**

At load/discharge port 12 hours turn time to be allowed unless discharging sooner commenced, in which case actual time used to count.

Any time lost subsequently by vessel not fulfilling the requirements of readiness in all respects to discharge, including failure to obtain free pratique, customs clearance for vessel excluding cargo, or any other reasons for which the vessel's Master, Owners or their agents are responsible, Owners shall be responsible for such time loss, provided such failure prevents vessel from discharging.

Laytime to end upon completion of loading. Laytime to cease upon completion of discharge.

Shifting time at both ends from customary anchorage to working anchorage or from anchorage to loading / discharging berth not to count as lay-time even if vessel is on demurrage. Shifting time shall commence from Pilot on Board and end when the vessel is 'All fast along side, hatches opened'.

**37. Demurrage:**

USD 35,000 per day pro rata. Despatch at half demurrage rate / working time saved both ends.

Laytime between load port and discharge port non-reversible.

Cargo to be discharged by means of Vessel's cranes/grabs to be operated by stevedores appointed and paid for by the Charterers free of risk and expense to the Owners.

If required, the Vessel's cranes may be used to hoist on board, shift from hold to hold and put ashore again a bulldozer of up to 8 MT weight free of expenses to the Charterers and/or Stevedores. Stevedores / cranes men for such operations to be on Charterers account.

**38.** Ship Owners/Master shall provide free use of light as on board that may be needed for working the Vessel at night and in each case free of expense to the Shippers/Charterers/stevedores. Ship Owner/Master to ensure sufficient lighting with deck lights, headlights, is available.

**39.** Overtime shall be for the account of the party ordering same.

**40.** Owners/Master/their Agents shall allow representatives of inspecting agency nominated by Shippers/Charterers on board to carry out draft survey and to inspect/supervise at all stages of loading/storage/discharging of the cargo at





**RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD.,
CHARTER PARTY DATED 14th FEBRUARY, 2008**

loading/discharging ports such time to count as lay-time unless such inspection is carried out during turn time both ends.

**41.** In the event of breakdown of gears/cranes and other equipment of the Vessel by means of disablement or insufficient power etc., the period of such inefficiency shall not count as lay-time pro-rata to the number of cranes on board.

**42.** Vessel to hold a valid gear certificate in accordance with International Dock Safety Convention covering the duration of the voyage and the same to have been tested.

**43.** Bill(s) of Lading to be issued in "CONGEN" Bill form only. Bill of Lading to be marked "Freight payable as per Charter Party".

**44.** Cost of first opening and last closing of hatches at each port to be to Owner's account and time used not to count as lay-time.

**45.** Charterers agents at both ends subject to competitive port D/A.

**46.** At load / discharge port(s), initial draft survey time to count as lay-time only after expiry of Turn Time. In case initial draft survey is carried out during the turn time, such time not to count. Time used for final draft survey not to count as lay-time even if vessel is on demurrage, at both ends.

**47.** Freight USD 27.75 per metric tone Free in out basis 1/1

**48.**a) Freight to be paid in U.S Dollars by Telegraphic transfer to : -

Pay to:      **ABN Amro Bank**
             **250 Bishopsgate**
             **London  EC2M4AA**

Swift Address:  **ABNAGB2L**

For Credit to  Account No:      ████████  *REDACTED*

Of:                              The Great Eastern Shipping Company Limited, Mumbai

New Jersey Correspondent : ABN Amro Bank N.V.,
                           **499 Washington Boulevard**
                           **15Th Floor,**
                           **Jersey    City,    New    Jersey    07310**

Swift Address:      **ABNAUS33**

less 2.5% address commission

b)95 percent freight to be paid by the Charterers to the Owners' nominated bank account within 3 banking days after completion of loading and signing and releasing Bills of Lading marked only as "Freight payable as per Charter Party". Balance 5 percent alongwith demurrage / despatch within 25 days upon completion of discharge and receipt of SOF, timesheet from the Owners and finalisation of laytime calculation at load/discharge ports.
Freight to be paid as per bills of lading quantity as per draft survey.

Commencement of discharge to take place only after payment of freight and time lost, if any, to count as laytime.

freight to be paid .





INTEROCEAN

## RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD., CHARTER PARTY DATED 14th FEBRUARY, 2008

c)Owners to confirm receipt of funds upon receipt.

d)Freight is deemed earned upon completion of loading, discountless / non-returnable, vessel and/or cargo lost or not lost.

**49.** Laydays/cancelling: 0001 hrs LT 25th February – 2359 hrs LT 5th March, 2008 ( ~~2400 hrs local time )~~
Gencon clause to apply as per Clause 9.

**50.** Any damage caused by stevedores during the currency of the Charter Party at load port and discharge ports shall be notified by the Master to the stevedores at the time of occurrence and to the Charterers or their Agents in writing latest within 24 hours of such occurrence or as soon as possible thereafter, but not after the Vessel sailed from the load or discharge port as applicable.
Master will endeavour to obtain a written acknowledgement in writing by the Shippers/ receivers and Charterers' Agents at the load port or discharge port as the case may be. Stevedore damage to be settled directly between Owners and stevedores, however, Charterers/receivers will assist Owners in obtaining settlement from stevedores at the load / discharge port(s). However Charterers remain responsible for settlement of any stevedore damage.

**51.** All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitration of two arbitrators carrying on business in London, who shall be members of the London Maritime Arbitrators' Association, one to be appointed by each of the parties, with power to such arbitrators to appoint an umpire in the event that they do not agree. Their decision or that of any two of them shall be final and for the purpose of enforcing any award, this Agreement shall be made a rule of the court.
If one party fails to appoint an arbitrator either originally or by way of substitution, as aforesaid, for (7) seven days after the other party having appointed his arbitrator, has served the party making default with notice to make the appointment, the party who has appointed an arbitrator may appoint that arbitrator to act as a sole arbitrator in the reference and the award shall be binding on both parties as if he had been appointed by consent. English law to apply.
The arbitrators shall award the full costs (including reasonably attorneys' fees) attributable to each unconceded issue in any arbitration to the party successful on that issue. In the event of any dispute not exceeding US $25,000.00 both parties to submit to the Small Claims Procedure in accordance with LMAA terms and conditions.
The parties agree to take all reasonable steps to permit the consolidation of any arbitration between them with any related arbitration.
If there is a dispute in interpretation between the printed clause and the rider clause, the rider clause will prevail over the printed clause.

**52.** Arbitration in London, English law to apply.

**53.** Vessel has 4 cranes (1+3 ~~24~~ 25 -mt and 2+4 ~~20 mt)~~ 30 ~~including grab weight of approx 9 -mt)~~ plus presently equipped with 4 x 12 cbm grabs.   Owners confirm that vessel's cranes/grabs are suitable for achieving guaranteed discharge rate always basis shore facilities & weather permitting and usage of all cranes & grabs for full 24 hours'





## RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD., CHARTER PARTY DATED 14th FEBRUARY, 2008

In case the vessel's cranes/grabs are not able to achieve the load/discharge rate, a mutually agreed independent marine surveyor will be appointed to determine the cranes/grabs capacity.'

In the unlikely event the crane/grabs capacity is determined to be less than as warranted in the Charter Party description, the loading/discharging rate will be prorated.

Performing vessel to be in every way suitable for trading Indonesia to India.

**54.** Owners guarantee that Vessel has fully automatic grabs which do not require manual labour to open/close.

**55.** The Owners undertake that the Vessel has not been sold nor will be sold for scrapping or otherwise during the currency of this Charter.

**56.** At the discharge port time lost by reason of all or any of the following causes shall not be counted as discharge time, unless Vessel is already on demurrage:

a)War, rebellion, tumult, political disturbances, insurrections.

b)Lockouts, strikes, riots, civil commotions.

c)Epidemics, quarantine, landslips, floods, frost or snow, bore tide, bad weather.

d)Stoppage of work whether partial or general by workmen, longshoremen, tugboat men or other hands essential to the working of the Vessel or discharge of cargo from the Vessel.

e)Intervention of sanitary customs and/or other constituted authorities.

f)Stoppages whether partial or total on rivers and canals.

**57. Force Majeure Clause :**

War whether declared or not, civil war, riots and revolutions, acts of sabotage, natural disasters, such as violent storms, cyclones, earthquakes, floods, destruction by lightening, explosions, fires, destruction of mining machinery, and of any kind of installations, boycotts, strikes, and lockouts of all kinds, go-slows, occupation of mines and premises, work stoppages whether partial or total, political disturbances, acts of authority, whether lawful or unlawful, accidents and/or breakdowns at the mines, at shippers or receivers' works or wharf, partial or total stoppage on railways, rivers, or canals, intervention of sanitary, customs, and /or other constituted authorities, epidemics, quarantine, and time lost at any time by reason of all or any .of the aforementioned causes shall not be computed in the loading or discharging time or as demurrage unless vessel is already on demurrage in which case all such time to count. An occurrence of same exceeding a period of 7 days, directly or indirectly affecting the performance of this charter party will entitle either party to cancel this charter party without liability for any loss or damage.

Force majeure to be applicable always providing that these extraordinary circumstances are beyond the control of the Charterers and came into force after the date of fixing of



<u>**RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD.,
CHARTER PARTY DATED 14th FEBRUARY, 2008**</u>

this vessel. Also same to be valid only if duly supported by relevant documents from port authorities.

**58.** Vessel shall have a valid International Trade Federation Certificate or a bona fide agreement acceptable to the International Transport Workers' Federation.

**59.** Bills of lading to be issued strictly as per Mate's Receipt.
At load port Charterers and/or their agents are authorised by Owners to sign and release bills of ladings on behalf of Master as per Master's authorization letter but bills of lading always to be in accordance with mate's receipt.

**60.** Deleted

**61.** If Shippers present multiple Bills of Lading, Master or the agents to sign the same always after receipt of written instructions from Charterers.

**62.** Bill(s) of Lading to convey full name of the Owners of the Vessel.

**63.** Taxes/dues/levies on cargo to be for Charterers' account both ends but customary Vessel's port charges at load / discharge port(s), including berthing expenses and any taxes/dues/levies on Vessel/freight even if measured by quantity of cargo on board to be for Owners' account both ends. Wharfage if any to be on Charterers account.

**64.** The Vessel nominated by Owners shall be classed highest Lloyds or equivalent, be in thoroughly seaworthy condition, comply in every respect with all international and local regulations, comply with all regulations governing the carriage by sea of coal in bulk and shall be maintained as such for the duration of the voyage.

**65.** Master to tender daily ETA notice to notified parties.
Notify parties to whom ETA notices should be sent:

1) ptbbp@yahoo.co.id
2) shipping@batuborneo.zzn.com PIC Mrs Lisbeth/Mr. Asep
3) bprltd@indosat.blackberry.com
4) oki@bumipacific.com
5) ict@indosat.blackberry.com
6) intlcoaltrade@gmail.com
7) kn.venkat@visacomtrade.net
8) vikas.agarwal@visacomtrade.net
9) ops@visacomtrade.net

**66.** Owners warrant vessel suitable for grab discharge and cargo to be loaded into the main cargo holds only.

**67.** In case the original Bills of Lading not be available upon vessel's arrival discharge port, Owners/Master agree to discharging/release cargo against presentation of Charterers Letter of Indemnity in Owners P&I Club wording signed by Charterers only. Fax copy of Letter of Indemnity to be acceptable. Copy of bill of lading to be attached with the Letter of Indemnity.



## RIDER CLAUSES TO MV JAG RAVI / VISA COMTRADE (ASIA) LTD., CHARTER PARTY DATED 14th FEBRUARY, 2008

In case receivers are other than those appearing on original bill(s) of lading then Charterers to provide receivers Letter of Indemnity as well, as per Owners P&I Club wordings. Charterers to attach copy of bill(s) of lading along with Letter of Indemnity.

**68.** New Jason, New Both to Blame Collision Clause, Chamber of Shipping War Risk Clauses one and two also P&I Bunkering Clause are deemed to be incorporated in this Charter Party.

**69.** In the event of a boycott arising due to vessel's flag or labour boycott against the ship due to her registry and/or crew, time lost and all consequences for Owners' account and time not to count if boycott affects the loading, stowing and securing of cargo. If loading/discharging of cargo on the vessel is adversely affected due to any of the aforementioned reasons and if vessel is already on demurrage, such demurrage to be suspended for the period during which loading/discharging cannot be carried out.

**70.** Owners guarantee to maintain a full P&I cover for the duration of this Charter Party.

**71.** Owners confirm the vessel will only load Charterers' cargo and sail directly to discharge port.

**72.** Owners guarantee that vessel is not intended for break-up on completion of engagement entered into under this Charter. Should Owners contrary to the above guarantee sell the vessel for break-up before she has been completely discharged and released by the receivers of the cargo, then Owners to pay whatsoever penalty might be assessed against the Charterers forthwith.

**73.** Before and during loading the Master of the vessel shall:

a)Opening of hatches in good time both at load and discharge port(s).

b)Vessel's working 7 days a week, 24 hours a day, during the entire loading / discharging period.

c)Suitable provision for ventilation and the safety of men working in the holds. Master to remain solely responsible for the vessel's safe loading, trimming, and discharging including the taking on or discharge of ballast.

d)Prompt departure of vessel from load port forthwith upon completion of loading.

**74.** Vessel should possess trim correction tables for all tanks, failing which all ballast tanks should be either full or empty during the survey.

**75.** No in lieu of weighment applicable.



******************



....
Date: 10th September, 2008
Ref: IC/VNP/215/08

ABHISHEK / VANDANA

WE ARE PLEASED TO GIVE CLEAN FIXTURE RECAP AS AGREED
BETWEEN OWNERS AND CHRRS WITH CHARTER PARTY DATED 10TH SEPTEMBER, 2008

++ CLEAN FIXTURE RECAP ++
========================================

*// ALL NEGOS/EVENTUAL FIXTURE TO BE STRICTLY PRIVATE AND
CONFIDENTIAL AND NOT TO BE REPORTED BY OWNERS, CHARTERERS
AND BROKERS TO ANY THIRD PARTY OR **FIXTURE LIST //*

MV JAG RAVI ? EX SEA SATIN
========================================
INDIAN FLAG, SDBC - BUILT MARCH 1997
PLACE OF CONSTRUCTION - CSC, TAIWAN,ROC
CLASS , NKK / IRS
SUMMER DWT/SUMMER DRAFT ABOUT 45342 MT ON ABT 10,921M
TROPICAL DWT/DRAFT ABOUT 46,543 ON ABT 11.148M
WINTER DWT/DRAFT ABOUT 44.144 ON ABT 10.69M
FRESH WATER DWT/DRAFT ABOUT 45,348 ON ABT 11.17M
TPC 52 78 MT ON FULL DRAFT
L.O.A./BEAM/L.B.P. 189,95/32.2/180 M
MOULDED DEPTH 15,84 M
TONNAGE INT'L PANAMA SUEZ
GROSS 26,322
NET 14,814
HOLDS/HATCHES FIVE/FIVE
CAPACITY GRAIN/BALE ABT 57,669 / ABT 55,646
LIGHT SHIP 7833
FREEBOARD ON SUMMER DRAFT 4,916 M
CONSTANTS ABOUT 350/450 MTS EXCL FW

CARGO HOLDS CAPACITIES/DIMENSIONS .

HOLD GRAIN BALE HATCH SIZE HOLD LENGTH
NO CBM CBM (M)X(M) (M)
_____

1 9845 36 9539.17 16.8 X 16 4 26.4
2 12239.12 11868.18 20.0 X 16 4 27.2
3 11894.09 11552 73 20.0 X 16 4 27.2

# EXHIBIT

# 2

# VISA

## VISA COMTRADE (ASIA) LIMITED

13/F Tower One, Lippo Centre
89 Queensway, Hong Kong

Tel : +852 2022 3006
Fax : +852 2877 8110

Date : 6th October 2008

To:   The Great Eastern Shipping Co. Ltd
      Mumbai, India
      The Owners of the MV JAG RAVI

Dear Sirs,

Ship:    MV JAG RAVI

Voyage : TABONEO ANCHORAGE, SOUTH KALIMANTAN, INDONESIA to
         NAVLAKHI SEAPORT, INDIA

Cargo :  INDONESIAN STEAM (NON-COKING) COAL IN BULK

Bill of lading:

| Sl | B/L No. | Date | Place of Issue | Quantity |
|----|---------|------|----------------|----------|
| 1. | 01A/BJM-IND/08 | 30TH SEPTEMBER 2008 | BANJARMASIN | 10,000 MT |
| 2. | 01B/BJM-IND/08 | 30TH SEPTEMBER 2008 | BANJARMASIN | 10,000 MT |
| 3. | 01C/BJM-IND/08 | 30TH SEPTEMBER 2008 | BANJARMASIN | 10,000 MT |
| 4. | 01D/BJM-IND/08 | 30TH SEPTEMBER 2008 | BANJARMASIN | 10,000 MT |
| 5. | 01E/BJM-IND/08 | 30TH SEPTEMBER 2008 | BANJARMASIN | 4,104 MT |
|    |         |      | TOTAL - | 44,104 MT |

The above cargo was shipped on the above ship by :

      P.T.HARKAT UTAMA MULIA MANDIRI
      JL. AHMAD YANI KM. 37TH, SUNGAI PERING,
      MARTAPURA – BANJAR
      SOUTH KALIMANTAN, INDONESIA
      TEL : +62 511 4773577 FAX: +62 511 4773577

and consigned TO ORDER for delivery at the port of NAVLAKHI SEAPORT, INDIA but
the bill of lading has not arrived and we, VISA COMTRADE (ASIA) LIMITED, hereby
request you to deliver the said cargo to BINANI CEMENT LIMITED at NAVLAKHI
SEAPORT, INDIA without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows:

1. To indemnify you, your servants and agents and to hold all of you harmless in
   respect of any liability, loss, damage or expense of whatsoever nature which you
   may sustain by reason of delivering the cargo in accordance with our request.

2. In the event of any proceedings being commenced against you or any of your
   servants or agents in connection with the delivery of the cargo as aforesaid, to
   provide you or them on demand with sufficient funds to defend the same.



- 1 -

# VISA

## VISA COMTRADE (ASIA) LIMITED

13/F Tower One, Lippo Centre
89 Queensway, Hong Kong

Tel : +852 2022 3006
Fax : +852 2877 8112

3. If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5. As soon as all original bills of lading for the above cargo shall have come into our possession to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you, whereupon our liability hereunder shall cease.

6. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7. This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice England.

Yours faithfully
For and on behalf of
Visa Comtrde (Asia) Limited

Abhishek Agarwal
Asstt. General Manager

- 2 -